863 F.2d 47
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The ESTATE of William J. CALLAHAN, deceased, William J.
Callahan, Jr., Personal Representative, Plaintiff-Appellant,
v.
CITY OF DETROIT and Gary Konkel, Defendants-Appellees,
Blue Cross/Blue Shield, Intervenor.
 No. 87-2088.
 United States Court of Appeals, Sixth Circuit.
 Nov. 16, 1988.
 
 Before CORNELIA G. KENNEDY, BOYCE F. MARTIN, Jr., and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The Estate of William J. Callahan appeals certain rulings of the district court and the judgment of no cause of action against the City of Detroit in this Sec. 1983 civil rights action. We affirm.
 
 
 2
 On December 9, 1984, Callahan received an injury while in the custody of detention officer Gary Konkel at a precinct station of the Detroit Police Department. Callahan alleged that he suffered the loss of his left eye as the result of mistreatment by Konkel.
 
 
 3
 On September 27, 1985, Callahan filed suit under 42 U.S.C. Sec. 1983, naming a John Doe later identified as Konkel, the City of Detroit (City), Chief of Police William Hart, and Precinct Commander Thomas Raymus as defendants. Callahan filed an amended complaint on April 22, 1987. On May 19, the district court deleted portions of the complaint that referred to alleged policies of the police department regarding assignment of prisoners to detention officers because Callahan failed to identify which specific policies were being challenged.
 
 
 4
 Trial began on August 18, 1987, at which time the court dismissed Hart and Raymus as defendants. During trial, Callahan offered several exhibits concerning Konkel's mental health and prior use of force against prisoners for the purpose of establishing that the City had notice that Konkel should not have been assigned as a detention officer. Only one exhibit, a "charge sheet" charging Konkel with striking prisoners Cleveland Jenkins and Roscoe Townes on September 6, 1984, was admitted. The district court excluded the following other exhibits: (1) a request for transfer dated February 1, 1979, which was denied because of Konkel's "mental problem"; (2) various duty status reports placing Konkel on restricted duty during 1978-79 and during 1985-86; and (3) an internal investigation of the Jenkins and Townes incident. The district court also denied Callahan leave to substitute an expert witness on the grounds of unfair surprise and prejudice to the City. The jury awarded a judgment of $56,000 against Konkel, but decided that a cause of action had not been stated against the City. Callahan now appeals the adverse rulings of the district court.
 
 
 5
 On appeal, Callahan offers five principal arguments. Specifically, Callahan asserts that: (1) the district court should not have limited the evidence tending to show the supervisors' indifference to the potential for misconduct by detention officers; (2) the district court should not have struck portions of the complaint alleging a failure to follow or enforce rules regarding the assignment of prisoners; (3) the district court erred in dismissing Chief of Police Hart and Precinct Commander Raymus from the action; (4) the district court abused its discretion in not allowing substitution of an expert witness; and (5) the district court should have instructed the jury that punitive damages could be recovered against the City.
 
 
 6
 An examination of the relevant case law reveals, however, that Callahan has failed to state any grounds that would justify the reversal of the judgment of no cause of action against the City. In Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658 (1978), the Supreme Court determined that a municipality could not be found liable under Sec. 1983 solely because it employed a tortfeasor, and held that the municipality as an entity could be responsible under Sec. 1983 only when the execution of a municipality "policy" or "custom" caused the particular injury.
 
 
 7
 More recent decisions have further delineated the policy/custom standard of Monell. In City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985), the court determined that a single isolated incident of the use of excessive force by a police officer could not establish an official "policy" of a municipality. Moreover, this Circuit has held that, while a municipality may be liable under Sec. 1983 for inadequate training or supervision of its police, a plaintiff cannot succeed if the "policy" of inadequate training and supervision arose from mere negligence. Rymer v. Davis, 775 F.2d 756 (6th Cir.1985), cert. denied, 107 S.Ct. 1369 (1987); Molton v. City of Cleveland, 839 F.2d 240 (6th Cir.1988).
 
 
 8
 An analysis of Callahan's arguments within the framework of existing case law makes clear that Callahan has not asserted any grounds to justify reversal. First, Callahan has generally objected to the exclusion of evidence concerning Konkel's prior misconduct and mental problems which, according to Callahan, tended to show the supervisors' indifference to the potential for misconduct by detention officers. The district court's exclusion of this evidence was, according to the City, entirely proper, and, in our opinion, certainly does not constitute an abuse of discretion. The 1979 request for transfer and the 1978-79 duty status reports were excluded by the district court because they were prejudicial and because they were not relevant to Konkel's fitness as a detention officer in 1984. The 1985-86 duty status reports related to incidents occurring after the alleged injury to Konkel in 1984 and were excluded on relevancy grounds. The investigative report pertaining to Konkel's mistreatment of prisoners Jenkins and Townes was excluded because the report primarily contained information gathered after the date of Callahan's injury and because the charge sheet, which was admitted into evidence, related to the same incident. The district court's exclusion of evidence does not rise to the level of an abuse of discretion, and, even if the disputed evidence had been admitted, Callahan would still apparently have failed to establish, as required by Rymer and Molton, that the City had a "policy" of inadequate police training and supervision and that this "policy" arose from more than mere negligence.
 
 
 9
 Second, Callahan asserts that the portions of his complaint regarding the City's failure to follow or enforce rules governing the assignment of prisoners were proper and should not have been struck. The district court struck these portions upon Callahan's failure to identify the rules, regulations or policies to which he was referring. Callahan argues that he could not specifically identify the relevant rules because he had not been furnished with any information by the City. He fails, however, to support his argument with any case law, and given the court's power to strike, at its own initiative, any immaterial or redundant matter from pleadings, the action of the district court in striking a portion of Callahan's complaint does not justify reversal.
 
 
 10
 Callahan also argues that Chief of Police Hart and Commander Raymus should not have been dismissed from the action. The district court dismissed Hart and Raymus on the ground that a supervisory officer cannot be found liable under Sec. 1983 unless he actively directed, encouraged or participated in the commission of illegal acts. Because Callahan's claim constituted, in the opinion of the district court, merely a claim of negligence against Hart and Raymus, the claim was dismissed. Under the authority of Coffy v. Multi-County Narcotics Bureau, 600 F.2d 570 (6th Cir.1979), we cannot disagree with the district court.
 
 
 11
 Fourth, Callahan contends that the district court abused its discretion in disallowing the substitution of an expert witness for another expert who was unavailable. Callahan states that he had tried to secure the first expert's testimony and that a de bene esse deposition was not possible because the City did not produce during discovery the information upon which to base an expert opinion. We believe that the district court did not abuse its discretion in not permitting the substitution of the expert witness, given Callahan's failure to support his argument with any case law and given that the substitution of an expert witness on such brief notice (Callahan proposed the substitution on the Friday before the Monday when the expert was scheduled to testify) might have been unfair to the City.
 
 
 12
 Finally, Callahan argues that the district court should have instructed the jury that punitive damages could be recovered against the City. This argument is patently frivolous because the Supreme Court clearly held in City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981) that a municipality is immune from punitive damages under Sec. 1983.
 
 
 13
 For the foregoing reasons, we affirm the judgment below.